Thank you, Your Honor, and may it please the Court, Matt Gregory on behalf of the petitioner in this case, Mr. Ni, and I'd like to reserve three minutes for rebuttal, if I may. This is a case where the immigration judge denied asylum to a teenage Chinese refugee because he did not adequately explain, in her words, the concept of baptism to her personal satisfaction. He did not express, in her words, a desire to proselytize. So wait a minute, counsel. The immigration judge and then the BIA both had several other reasons beyond what you've characterized as a religious test. So assuming we just agree with you that that was erroneous and that the agency should not have based an adverse credibility determination on that factor, why are there not other sufficient grounds that are substantial evidence to support that determination? Matt Gregory Two reasons, Your Honor, and I'm happy to talk about both. So first, if you look at the immigration judge's actual decision, the asylum section of her decision, this is at pages 18-19. She explains very specifically why she was denying his application. On the question whether he had a well-founded fear of future persecution, she said clearly that this was because the subjective element was not satisfied. The reason she gave was that she did not believe he was a Jehovah's Witness. The reason she didn't believe he was a Jehovah's Witness, again, religious stereotypes, lack of sufficient understanding of religious concepts, things that are impermissible under this Court's precedent. Given that reasoning, I think there's no way you can uphold the decision below without endorsing and affirming the IJ's reliance on these religious stereotypes. Judge Goldberg Mr. Gregory, is it your argument that the IJ's view about the religious test pervades the other adverse credibility determinations? Is this some sort of a due process-y type argument that you're raising? Matt Gregory No, Your Honor. First of all, it's just taking her at her own word. So when she says he has no well-founded fear of future persecution, she says it's because she did not believe he's a Jehovah's Witness. The question of all these other inconsistencies comes in when she talks about his fear of – excuse me, whether he had established past persecution and a rebuttable presumption. But when she then turns to the fear of future persecution, she focuses very specifically and almost exclusively on this religious-based reasoning. I would like to turn, though, to these other purported inconsistencies because I think these are independent legal errors that we would love the court to address, even if the court does remand the case. There's not enough time in 10 minutes to get through all of them today. We explained them all in our brief. I'd like to focus on a few that appeared in both the IJ's decision and the BIA's decision. Judge Goldberg So before you do that, I still don't understand why the religious test, if we think that's erroneous, why that – but if there's independent grounds, why we have to look at the religious test at all? Because it's under chainery and sort of general – you take the reasoning that the BIA employed. Judge Goldberg Correct. And the BIA didn't employ the religious test reasoning. Judge Goldberg But the BIA did adopt all of the IJ's reasoning. Judge Goldberg Yes. Judge Goldberg And they actually – Judge Goldberg Yeah, so what do we do with that? I'm not sure if I've seen that, where the BIA adopts the reasoning but only cites three specific things. Judge Goldberg So you still look through to both decisions. I apologize, I can't remember the name of the case. I'll have to decide what, in our brief, the government does as well. When the BIA does this, they cipher Bono and adopt the reasoning and then list a few reasons of their own, you look at both the IJ's and the BIA's. Judge Goldberg And then if the BIA's three cited reasons are sufficient, why do we have to go further than that? Judge Goldberg Again, because you have to look through to the IJ's decision as well, and there's nothing in either the BIA's decision or the IJ's decision that addresses the future fear of persecution besides this impermissible religious test, this lack of – Judge Goldberg Well, I'll go through that. Judge Bielanski Okay, so you're skipping past persecution. So the IJ listed numerous reasons for not finding petitioner credible, and then said there's absent credible testimony, there's no corroborating evidence, there's no past persecution, so you don't have the presumption for future persecution. So it seems as if your argument from the way you've answered our questions is that yes, there's substantial evidence for the finding there's no past persecution. Without that, there's no presumption of future persecution, and what evidence is there that he has an objective and a subjective fear of future persecution and that the agency got that wrong? Judge Goldberg So very much that is not our position. We think that the other – Judge Bielanski But what you did was conflate the two parts, the past and future persecution, in response to my very direct question about the adverse credibility determination. You then went immediately to future persecution and said nothing about past persecution. Judge Goldberg Because the IJ specifically rested on that reasoning in resolving the question of future persecution against him, and under chainery and basic principles of administrative law, that's the reasoning this Court has stuck with. There's no way to uphold this decision without addressing it. Now, I do want to turn to these other inconsistencies because, again, I think these are riddled with their own both legal errors and factual errors. I'll just talk about a few. So this issue of the circumstances of his father's death, this is clearly a mischaracterization of the record on the IJ's part. He said repeatedly his father died of lung cancer, never once said his father died because he was beaten to death by Chinese police. We cite all of these statements in our brief. The government cites nothing in the record in response. The IJ said that she would have expected to see some sort of proof that his father died, a death certificate, something of that nature. There was a death certificate in the record that said AR-354. The IJ simply missed it, didn't address it at all. In addition, she said there was a problem with, quote, the Form I-589s, there was some sort of discrepancy. Again, clear misrepresentation of the record. So under a law, there's no magic number of bases that we need to find to find that an adverse credibility determination is supported by substantial evidence, and there are several in this case. This is one of the most detailed IJ opinions I've seen, and there's far more than the ones that you're focusing on, and I understand why you want to focus on the ones that you consider the weakest, but you still have the problem of his lack of candor with the IJ in failing to comply with his conditions of release and where he was residing, false statements in obtaining a visa, the inconsistencies between his testimony and Sister He's declaration. I mean, all of those things are still out there, even if you don't talk about them. So again, in 10 minutes, I don't have time to talk about all of them, although I'm very happy to address the ones Your Honor just mentioned. This issue of whether he misrepresented where he was living, again, simply falls. At the February hearing, the government points to what he said was, my address is the same. He explained on the record at his hearing, he thought it needed to be the mailing address, not his physical address. The IJ and the BI never even considered that explanation. Under Manya and other cases, that means it is not a proper basis for an adverse credibility determination. The issue with his visa application is very similar. This Court's precedent is quite clear that where, as here, someone uses false information Wait, so did he live with his sponsor? He did live with his sponsor initially, and then he moved to a new island. He did not update his address on time, but he did live with her initially. For how long? The record's a little bit unclear on this point. It was about a week to two. It was a short period of time. Okay. So in Singh, we said that there's an exception for providing false information to escape persecution, but it's strictly limited. So it seems that your argument would swallow the exception, and that any time a person provides false information, and they're also seeking asylum, we have to say that's okay. That's not something that supports a finding of lack of candor. That's not correct, because once they are here in the United States, once they have escaped the persecution country and arrived there Right. No, I understand your point, but the problem I'm having with that rule that you're suggesting is that under any circumstances whatsoever, in another country, they give false information to consular officers to get a visa to the United States. That's a free pass. So I would agree to any sort of decision in Tiananmen Square and this court's decision on Taipei where on similar situations, the court says exactly that, that if someone needs to lie to escape persecution in Tiananmen, specifically in China, specifically in a visa application, it is not a proper basis for an adverse credibility determination. In Akinme, the petitioner had actually already escaped the country. He was in South Korea and used a false passport to obtain entry in LAX. The court says the same rule applies. You don't use this because it says nothing about his actual credibility as opposed to statements in the asylum proceedings. What struck me was the IJ had an analysis that there needed to be some immediate fear of harm in order to justify the lying on the visa application, but I don't see that anywhere in cases like Akinme or Gula or others. It's about lying to get into the country. It's a different situation, as Singh points out, once you're already in the country, if you're lying for other reasons. That's exactly correct, Your Honor, and that actually is the facts in the Akinme case, and it's what the Eighth Circuit suggested, the Tian case. I see I'm running out of time. I'd like to reserve a little bit for rebuttal, if I may. All right. Thank you. Good morning, Your Honors. May it please the Court, Roberta Roberts for the U.S. Attorney General. This petition for review should be denied because substantial evidence supports the adverse credibility determination, and record evidence does not compel a contrary finding. As was shown here, the petitioner has a history of repeated willingness to deceive U.S. authorities. Ms. Roberts, could you pick up on the point that I raised with counsel? Don't our cases in Gula and Akinme just speak to lying on a visa application or to an official in order to escape the country of persecution? They don't seem to indicate some sort of need for an eminence of harm showing or anything of that sort, which is what the IJ relied on. What is your view as to that? Yes, Your Honor. In Gula, the Court does specify that here part of the reason that the falsities are excused is because Gula and his wife, they felt that they were escaping certain death. And that goes to they were lying because they felt they were in imminent danger. But they were already in another country at that point, right? They used a false passport, I think initially a Canadian one or a Turkish one, to travel through a couple of countries. They weren't in imminent danger at that point. It was use of those passports to get into the United States that was contemplated. So I'm just – I'm having a hard time seeing any sort of eminence of harm element in any of the analysis here. The reason why they used false passports was because they felt that they were in immediate danger of certain harm, certain death. And that is what excused them using false documents to leave Iraq to make their journey through Turkey and Greece to then the United States. However, once they arrived at the United States, they did not use their fraudulent passports. Instead, they presented their true identities and they did not present any false documents to the U.S. government. And a particular point that is made in Gula is that he did not perpetrate any fraud on the U.S. government. He did not attempt to use fraud in his dealings with the United States. This court in Gula says that at pages 916 and 919, also this emphasis that although they used false documents in their travel, they did not use false information in their dealings with the United States. But they did in Akinmaid. So the couple in Akinmaid that were – they presented false Canadian passports to get into the United States. And the panel there said, we recognize that a refugee escaping persecution may lie about citizenship to immigration officials in order to flee places of persecution or secure entry into the United States. So that would seem to encompass the circumstances here. Let me ask you this. What do you make of the religious test argument that counsel is making? Do you think that the IJ committed any error in subjecting petitioner to having to explain baptism and other things to the IJ's satisfaction? No, Your Honor. The IJ did not subject the petitioner to any type of religious test. What happened was petitioner claimed that he was baptized. The immigration judge asked, what is baptism to you? And he said, it is a secret process. To that, the immigration judge asked, what does that mean? And petitioner says, it means that I officially joined Christianity. That was the extent of any questioning about the type of thing that he did as part of his religion. This is not a case where the immigration judge quizzed the petitioner asking him to recite the Lord's Prayer or to name the 12 apostles or to describe the difference between the Old Testament or the New Testament. That is a religious test. Here, the IJ just simply asked the petitioner about what he said he already did. What was baptism? What about the part about I don't believe you're a Jehovah's Witness because you haven't been – you don't have enough knowledge about it? I guess – so let me ask it this way. Suppose we agreed with you that there are sufficient adverse credibility findings apart from this area to support the determination that there was no past persecution. Don't we still have a problem with fear of future persecution if the whole basis for the denial of that piece of it was based on the IJ's perception as to whether this person was a practicing Jehovah's Witness? No, Your Honor. The well-founded fear analysis was not solely based on that. There's two points I'd like to make regarding that. First is that it was not the immigration judge's opinion that the petitioner did not have enough knowledge. Petitioner's own witness testified and said that petitioner did not have enough knowledge to teach others about being a Jehovah's Witness. So that is not something that the immigration judge just came up with on their own out of speculation. This is a repetition of petitioner's own witness's testimony. But why would that be – I'm sorry to interrupt just to follow up with that. Why would that be an adequate basis to deny a fear of future persecution? Even if the witness did say he doesn't have that much knowledge about the religion, why is that a legally tenable basis to deny a fear of future persecution claim? That was not the sole basis of denying the future persecution claim. Also in the analysis was that petitioner was able to leave China without incident using his own identity. He didn't pretend to be someone else because he's on Chinese government radar. He left under his own documents, his own name, without incident. He also was able to leave the province where police told him you can't leave this area, but he left to go to the consulate in Shanghai. He left to go to the consulate in Guangzhou. And that also goes to whether someone has a well-founded fear of future persecution. If there is a possibility that they could internally relocate to avoid persecution. In this case, it shows that there is because he was able to leave his area and go to various other areas in China without incident. I'm just looking at the paragraph of the IJ's opinion that your friend cited to us. It says what you've just said. It also says that there is no credible evidence that shows that the police seek him for any reason, which was also part of the fear of future persecution analysis. So I guess I think you're right. It's not just based on whether he had sufficient knowledge of the practices of Jehovah's Witnesses. Yes, Your Honor. So say that we disagree with you on the religious test, that we do think that that was erroneous. The fact that the BIA adopted the IJ decision in full, what do we do with that? Can we ignore that or do we have to opine on that? Your Honor, you are free to reject grounds that are not supported by substantial evidence. So if you were to not agree with that, you could still not agree, although the agency did adopt the entirety of the immigration judge decision. As long as substantial evidence with whatever grounds the court does find are supported by substantial evidence, the court can still uphold that. In fact, it is only in an extraordinary circumstance that this court can overturn an adverse credibility finding, only if the record compels it. And as the court has noted, this is one of the most detailed immigration judge decisions that lists more than 20 instances of bases to make an adverse credibility finding. So this is a case where substantial evidence more than supports the adverse credibility determination that was reached here. So a present counsel said that the IJ erroneously relied on a finding that the petitioner had not been candid with respect to his address and where he was living, and he says that's a misreading of the transcript. What is your response to that? Your Honor, I would say that it is not a misreading of the transcript. The petitioner was explicitly ordered as a condition of his release to live with his bond sponsor. He was released in December 2018, and according to the record, he also went to live with someone else on an entirely different island in December of 2018 as well. At the master calendar hearing in February 2019, the immigration judge asked the petitioner if the Honolulu address is still his address, to which the petitioner replies yes. Also at this hearing— The Honolulu address is the sponsor's address? Yes, Your Honor. Also at this hearing, the immigration judge told— Wait, this was at the master calendar hearing you were saying? Yes, Your Honor. Okay. Also at this hearing in February 2019, the immigration judge explicitly said, if your address changes, take this blue form, fill it out, and mail it within five days. So at this point at the February hearing, petitioner had already moved in December. It's already been from December to February. Petitioner has already moved. Petitioner was asked if he lives at the Honolulu address. He said yes, although he had moved two months, three months prior. I guess counsel did respond to that and said that his explanation was that he thought it was relating to the mailing address and not the physical address where he happened to be staying at. Did the IJ not consider that explanation adequately, or what would you say to that? Your Honor, that explanation is not an adequate explanation, as petitioner was represented by counsel at this time. So it is clear that the address, whenever you are moving— especially because the order was you must live at this address with your bond sponsor as a condition of your release. So his explanation is not a reasonable or sufficient explanation to not consider this in the adverse credibility finding. Additionally, petitioner did not submit a change of address until June or July of 2019, another three, four months after this February address. This is just but one example in the pattern of him continuing to make misrepresentations to the U.S. authorities. He said that his father was alive and paying for his trip from China to the U.S. when actually, according to petitioner, his father had actually passed away. In the initial asylum application that he filed, he lists his father as current location in China. But then, in an updated asylum application, states that his father is deceased, and he testified that his father had been deceased since 2009. This is just but a small section of the multitude of major inconsistencies and misrepresentations that he's made to the U.S. government. And for those reasons, I see that I have gone over my time. Petitioner—excuse me, respondent would request that the petition for review is denied. Thank you. Thank you. And Mr. Greger, we'll give you the three minutes you requested. Thank you, Your Honor. So there's a lot to unpack here, so I'll just start with a couple of clarifications of the record. This issue with his initial asylum application, the I-589 that my friend just mentioned, that is not what the record shows. If you look at both versions of the I-589s, the one that she's referring to is AR-546. His attorneys forgot to check a bubble for deceased next to his father's name. But we know this is a typo because they attached an asylum statement to that very same version of the form, which describes his father's death in detail. There is no discrepancy here on whether his father was deceased. Counsel mentioned that— Can I talk about the Akinmaid issue? So I think in Sing v. Holder, we said that the lie has to be related to escaping immediate danger. Do you disagree with that? I do disagree with that. I think Akinmaid shows that that's not the rule because he was in South Korea when— Well, Sing v. Holder, I think, is after that. Okay, Sing v. Holder does explain very clearly, though, that it's this difference between lies during your asylum application itself. And that was the facts in Sing. So there the person had told several pretty egregious lies during the application—excuse me, the asylum. So, I mean, we said there, but the deception here was completely unrelated to escaping immediate danger or gaining entry into the United States. And so, therefore, that lie could be used against him. Or gaining entry into the United States, which is exactly what we have here. So, basically, you're saying someone can lie if they want to come to the United States? That's what this court has said several times. It's what the HRSA— But what's the point of that? What's the policy behind that? Because, ultimately, this is a question about somebody's credibility, and the case law recognizes that people in countries such as China, totalitarian regimes, sometimes need to make false statements, use false documents, et cetera, to escape. No, but no, we're not talking about escape. We're just saying purely for entering the United States. So, if someone, any person, comes to the United States and lies to get in, that lie cannot be used against that person? I don't think it's—I'm saying that it can't be used against that person. I'm saying it's not a proper basis for an adverse credibility determination in an IJA's decision, and I'd refer you also to the— So, how can it be used against them? So, you know, if they break a law, clearly it could be used against them in that context. If there was some reason on the record that showed that this lie wasn't actually— There's got to be some limiting principle here. You can't just lie to get into the United States and say— and then the government can't use that against you. That just makes no sense to me. Your Honor, this court explained that principle in Levy-Garland where they said the principle is if you're not able to explain why this was necessary to get to the United States, then that's when you don't necessarily get the benefit of this rule. That's not our facts here, though. Wait, so the lie is okay if it's necessary to get into the United States? That's what this court has said in several cases. But that's not a limiting principle, though. Every alien can lie to try and get to the United States, and that can't be used against them for credibility and purpose? Are we talking about fleeing persecution? So it's not just lying about a visa application in general. You're lying for the specific purpose to flee persecution and gain entry into the United States that way, using false documents or other things. That's what Akin made sense to say. Yeah, so there's a limiting principle that there's got to be persecution, and then Singh v. Holder says you've got to be escaping immediate danger. I'd refer you to the Tian case in the Eighth Circuit, walks through this at length. Well, I'm talking about Singh v. Holder. It's the Ninth Circuit, so we're not bound by the Eighth Circuit, and we are bound by the Ninth Circuit. Correct. I think Singh read fairly as drawing a line between asylum applications, lies that are told to trick the immigration judge, versus lies that are told to obtain entry into the United States and escape persecution, which is our facts here. One last thing. I see I'm running out of time. I just want to remind the court the standard the counsel mentioned where you just find any reason that's enough, that is not the standard. Under Olam v. Garland, this court rejected the single-factor rule. You look at the totality of the circumstances. We would submit, if you read the brief, look just a little bit into the record on some of these purported inconsistencies. They just didn't satisfy that test here, and in particular, the religious-based reasoning, there's no way of getting around it. It was the basis for the fear of future persecution. Well, can I ask one final question? What about counsel's argument that he was able to move – to leave China without any problem or to move internally without any problem? In other words, that there were other reasons to deny the reasonable fear of future persecution beside the religious test. I'd refer you to the recent decision, Barsegian, similar reasoning by an IJ the court says, not a proper basis. The fact that someone might be able to move to another part of the country and face persecution there is not sufficient. The fact that they're able to travel within their own country is not sufficient. We cite other cases in our brief for that same point, but I think that itself, first of all, it's not the basis of the well-founded fear of persecution. It's clearly not the most important basis, and in any event, it is itself legally erroneous. Okay. Well, we're pretty significantly over time. Thank you. Thank you, counsel, both, for your arguments this morning. They were very helpful.
judges: BADE, BUMATAY, SANCHEZ